## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**FREDRICK GREEN**, *as the natural*　　　　　　　　　　　**PLAINTIFF**
*father and next friend of D.G., a minor*

**v.**　　　　　　　　　　　　　　　　　　　**Civil No. 3:23-cv-308-BWR**

**KILOLO KIJAKAZI,** *Acting*　　　　　　　　　　　**DEFENDANT**
*Commissioner of Social Security*
*Administration*

### MEMORANDUM OPINION AND ORDER

Plaintiff Fredrick Green, as the natural father and next friend of D.G., a minor (Plaintiff), proceeding *pro se* and *in forma pauperis*, brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security Administration finding that Plaintiff was no longer a disabled child. Compl. [1]; Pl.'s Br. [15]. Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner), filed a Br. [18] requesting that the decision of the Commissioner be upheld. Having reviewed the submissions, the record, and the relevant law, the Court will dismiss Plaintiff's case with prejudice.

### I.    BACKGROUND

Plaintiff was born on August 9, 2010. Admin. R. [11] at 57. On June 9, 2015 the Social Security Administration (SSA) determined that Plaintiff was disabled as of April 6, 2015. *Id.* at 57-65. On January 28, 2019, the SSA determined that Plaintiff's disability ended and terminated Plaintiff's Supplemental Security Income. *Id.* at 165-69. Plaintiff then timely requested a hearing before an Administrative Law Judge (ALJ), which was held on November 9, 2022. *Id.* at 34, 153-64, 192.

On January 18, 2023 the ALJ issued a hearing decision finding that Plaintiff's disability ended as of January 31, 2019 and that Plaintiff had not become disabled again since that date. *Id.* at 50. In reaching that decision, the ALJ followed 20 CFR § 416.994a(b)'s three-step medical improvement review standard (MIRS) evaluation process. *Id.* at 34-37.

The ALJ began her analysis by explaining that the medical decision of comparison, or "comparison point decision" (CPD), for whether Plaintiff's disability had improved was the June 9, 2015 medical decision finding Plaintiff disabled. *Id.* at 37. At the time of the CPD, Plaintiff had the following impairments: attention deficit hyperactivity disorder (ADHD), communication impairment, and asthma. *Id.* Plaintiff's symptoms associated with these impairments included difficulty communicating, difficulty breathing, asthma attacks, "defiant behavior, difficulty focusing, and impulsivity." *Id.* at 38, 79-85, 88-90, 102-23, 176, 381.

1.     The medical evidence before the ALJ

As part of the three-step MIRS evaluation, the ALJ reviewed Plaintiff's documented medical evidence. On November 8, 2018, Plaintiff visited Central Mississippi Health Services (CMHS) "for ADHD follow up and medication refills." *Id.* at 40. Plaintiff did not report any side effects from the medication "and specifically denied headaches, stomach ache, appetite change, irritability, social withdrawal or decreased interaction with others, extreme sadness or unusual crying, dull/tired behavior, tremors, repetitive movements, or self-injury." *Id.* Although Plaintiff had a history of asthma, breathing was normal aside from "[m]ild wheezing . . . attributed

to acute sinusitis." *Id.* In all other regards, Plaintiff was doing well and lacked any indication of "reduced attention or diminished concentration." *Id.* CMHS "assessed mild persistent asthma with acute exacerbation and ADHD." *Id.*

On January 14, 2019, Charles L. Gammel, Ph.D. (Dr. Gammel) conducted a consultative speech-language evaluation. *Id.* at 38. Dr. Gammel concluded that Plaintiff's "overall communication skills were in the mildly delayed range, that his conversational skills were adequate for everyday communication needs, and that his articulation was severely delayed for his age." *Id.* at 42.

On February 2, 2019, Hinds Behavioral Health Services (HBHS) performed an initial assessment on Plaintiff. *Id.* at 40. Although Plaintiff's father reported "defiant behavior, difficulty focusing, and impulsivity," the assessment found that "the [Plaintiff] was properly oriented with average intelligence and appropriate speech, behavior, appearance, mood, affect, thought content, memory, and judgment/insight." *Id.* at 41. HBHS assessed that Plaintiff had ADHD and prescribed him Ritalin. *Id.*

On March 26, 2019, Plaintiff went "to HBHS for a medication check." *Id.* Both Plaintiff and his father reported that Plaintiff had "calmed down." *Id.* Plaintiff's father told HBHS "that he no longer received calls from school about problematic behavior." *Id.* "Mental status examination showed [Plaintiff] to be alert and oriented times three with appropriate general appearance, good eye contact, cooperative behavior, age-appropriate speech, intact memory, and euthymic affect. His thought processes were goal-directed, organized, and logical." *Id.* HBHS continued Plaintiff on medication. *Id.*

On April 9, 2019 HBHS performed a medication check on Plaintiff. *Id.* The "[e]xamination showed the [Plaintiff] to be neat and casually dressed, calm, and cooperative with good eye contact, normal speech, euthymic mood, and fair judgment/insight." *Id.* HBHS continued Plaintiff on the same medication. *Id.* Plaintiff's father stated that Plaintiff "was making A's and B's in school with no behavior problems." *Id.*

A HBHS medication check on July 2, 2019 led to a similar report. *Id.* Plaintiff's father "mentioned being happy with the current medication regimen." *Id.* At both the April 9, 2019 and July 2, 2019 medication checks, Plaintiff was continued on the same medication regimen. *Id.*

HBHS did mental status examinations on March 13, 2020, April 29, 2020, and June 8, 2020. *Id.* The results "were essentially normal." *Id.* In April of 2020, the Plaintiff was prescribed daily Adderall. *Id.* Plaintiff's "father reported that the [Plaintiff] tolerated the medication without issues and that he had no major behavioral problems." *Id.*

Plaintiff had another HBHS medication check on November 23, 2020. *Id.* The results of the mental status examination were "unremarkable." *Id.* As before, Plaintiff and his father reported that Plaintiff handled the Adderall well and was not suffering adverse effects. *Id.* Plaintiff was continued on the same medication regimen. *Id.*

HBHS has a progress note dated March 19, 2021. *Id.* at 39. Plaintiff's "father reported that the [Plaintiff] was 'doing good' with fair grades and no behavior problems." *Id.* at 41. "On examination, the [Plaintiff] was well-developed, well-

4

nourished, alert, and oriented with adequate hygiene, appropriate speech, logical/age-appropriate thought processes, intact associations, fair judgment/insight, and appropriate/euthymic mood and affect. His recent memory, remote memory, concentration/attention, language, and fund of knowledge were all within normal limits." *Id.* at 41-42.

On May 18, 2021, Plaintiff went to CMHS for a "follow up." *Id.* at 42. "[T]he [Plaintiff]'s lungs were clear to auscultation with normal effort and no cough. He was well-developed, well-nourished, and oriented times four with age-appropriate behavior. No abnormal respiratory or psychiatric findings were noted on exam." *Id.* CMHS continued Plaintiff on ADHD and asthma medication. *Id.*

CMHS conducted the next round of examinations on July 8, 2021, November 23, 2021, January 25, 2022, and April 7, 2022. *Id.* The results "were all essentially normal and returned no abnormal respiratory, communicative, or psychiatric findings." *Id.* Janice Bacon, M.D. (Dr. Bacon) examined Plaintiff on April 7, 2022 and noted that Plaintiff's asthma was stable. *Id.* She continued Plaintiff on ADHD medication. *Id.*

2.     The ALJ decision

At step one in the MIRS analysis, the ALJ found that medical improvements occurred, compared to the CPD, as of January 31, 2019. *Id.* at 38. The ALJ based this finding on: (1) Dr. Gammel's January 14, 2019 evaluation; (2) the February 2, 2019 HBHS initial assessment; (3) the April 9, 2019 HBHS medication check; (4) the March 13, 2020, April 29, 2020, and June 8, 2020 HBHS mental status examinations; (5) the

March 19, 2021 HBHS progress note; and (6) the July 8, 2021, November 23, 2021, January 25, 2022, and April 7, 2022 CMHS examinations. *Id.* at 38-39. This evidence led the ALJ to conclude that there was "a decrease in medical severity of the impairments present at the time of the" CPD. *Id.*

At step-two, the ALJ found that, "[s]ince January 31, 2019, the impairments that the [Plaintiff] had at the time of the CPD have not functionally equaled the Listings of Impairments." *Id.* at 39. In making this determination, the ALJ considered all symptoms "consistent with the objective medical evidence and other evidence" and opinion evidence. *Id.*

When considering the Plaintiff's symptoms at step two, the ALJ follows a two-step process. *Id.* First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the [Plaintiff]'s pain or other symptoms." *Id.* Second, if the ALJ finds that such a medical impairment exists, the ALJ evaluates "the intensity, persistence, and limiting effects of the [Plaintiff's] symptoms to determine the extent to which they limit the [Plaintiff's] functioning." *Id.* at 39-40.

The ALJ summarized the testimony that Plaintiff presented at the hearing. *Id.* at 40. Plaintiff testified about daily activities and chores. *Id.* Plaintiff testified "that his medications help him focus and remain calm." *Id.* Plaintiff's father testified that he thought the medications were helping Plaintiff's focus, speech, and asthma. *Id.*

The ALJ determined that Plaintiff's "medically determinable impairments could" cause some of Plaintiff's alleged symptoms. *Id.* The ALJ also found that "the

6

statements concerning the intensity, persistence and limiting effects of the [Plaintiff's] symptoms are not entirely consistent with the objective medical and other evidence." *Id.* To the ALJ, the medical records documenting the effects of Plaintiff's ADHD, communication impairment, and asthma showed that Plaintiff's impairments were not "as functionally limiting as" Plaintiff alleged. *Id.*

The ALJ then summarized the evidence she used to reach this conclusion. *Id.* at 40-42. The ALJ considered all the medical information listed above and held that the "exam findings and repeated statements at medical visits regarding medication efficacy are inconsistent with the testimony and statements that the [Plaintiff] is disabled due to ADHD, communication impairment, and asthma." *Id.*; *see supra at* pp. 2-5. The ALJ found that Plaintiff "has no more than a less than marked limitation in any area of functioning." Admin. R. [11] at 40-42.

The ALJ also considered the opinions of the state agency medical consultants and mental evaluators, including Karen Hulett, M.D. (Dr. Hulett), Angela Herzog, Ph.D. (Dr. Herzog), and Eva Henderson, M.D. (Dr. Henderson). *Id.* Each opined that Plaintiff had medically improved since the CPD "such that the [Plaintiff] is no longer disabled." *Id.* The state agency medical consultants and mental evaluators "found that the [Plaintiff] had no more than a less than marked limitation in any area of functioning." *Id.* The ALJ found that the "objective test results, examination findings, clinical records, and other relevant evidence" supported these opinions. *Id.* The ALJ gave weight to the opinions of the state agency medical consultants and mental evaluators. *Id.*

The ALJ also gave "some weight" to Dr. Gammel's opinion. *Id.* The findings of the January 2019 speech-language evaluation supported Dr. Gammel's conclusions. *Id.* Dr. Gammel's opinion was also "somewhat consistent" with subsequent records. *Id.*

After detailing all the evidence, the ALJ went on to analyze Plaintiff's limitations in the six domains of function since January 31, 2019. These "domains of functions" include: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. *Id.* at 43-48.

First, the ALJ found that since January 31, 2019 Plaintiff "has had less than marked limitation in acquiring and using information as a result of the impairments present at the CPD." *Id.* at 43. As support, the ALJ looked to multiple pieces of evidence. *Id.* at 43-44. At the hearing, Plaintiff's father testified that Plaintiff is better at focusing and in school when on his medications. *Id.* at 43. The ALJ also relied on the notes from the February 2019 HBHS initial assessment, the HBHS April 9, 2019 medication check, the HBHS mental status examinations on March 13, 2020, April 29, 2020, and June 8, 2020, and the HBHS March 19, 2021 progress note. *Id.* at 43-44. These records showed that Plaintiff had average intelligence, was making A's and B's in school, and was overall "essentially normal." *Id.*

Second, the ALJ found that since January 31, 2019 Plaintiff "has had less than marked limitation in attending and completing tasks as a result of the impairments

present at the CPD." *Id.* at 44. For this finding the ALJ again looked at multiple pieces of evidence. *Id.* at 44-45. The hearing testimony showed that Plaintiff's medication helped him focus and do chores around the house. *Id.* at 44. The ALJ looked at the HBHS March 26, 2019 appointment notes, the HBHS November 23, 2020 medication check, and the HBHS March 2021 visit. *Id.* at 44-45. This evidence showed that Plaintiff was doing well with Adderall. *Id.* Plaintiff could stay calm and focused. *Id.* Plaintiff showed "cooperative behavior and thought processes that were goal-directed, organized, and logical." *Id.*

Third, the ALJ found that since January 31, 2019 Plaintiff "has had no limitation in interacting and relating with others as a result of the impairments present at the CPD." *Id.* at 45-46. The ALJ considered multiple pieces of evidence in reaching this finding. *Id.* Plaintiff testified at the hearing that his medications help him stay calm. *Id.* at 46. A HBHS medication check on March 26, 2019 corroborated this testimony. *Id.* At that check, Plaintiff was "feeling good," cooperating, and had "euthymic affect." *Id.* HBHS visits in April 2019, July 2019, and March 2021 led to similar observations. *Id.*

Fourth, the ALJ found that since January 31, 2019 Plaintiff "has had no limitation in moving about and manipulating objects as a result of the impairments present at the CPD." *Id.* at 46-47. The ALJ looked at multiple pieces of evidence in reaching this finding. *Id.* at 47. At the hearing, Plaintiff testified that he had gone camping and that he goes bicycle riding. *Id.* At a February 2019 HBHS visit, Plaintiff discussed playing basketball and other sports. *Id.* At a July 2019 HBHS visit,

Plaintiff's father commented on Plaintiff's gardening and attendance at summer school. *Id.* CMHS follow ups on July 8, 2021, November 23, 2021, January 25, 2022, and April 7, 2022 did not reveal any abnormalities. *Id.*

Fifth, the ALJ found that since January 31, 2019 Plaintiff "has had no limitation in the ability to care for himself as a result of the impairments present at the CPD." *Id.* at 47-48. The ALJ cited multiple pieces of evidence as support for this finding. *Id.* at 48. At the hearing, Plaintiff testified that he is in seventh grade and participates in online learning. *Id.* Plaintiff testified "that his medications help him focus and remain calm." *Id.* Plaintiff's father agreed and testified that he thinks Plaintiff's medications help Plaintiff do well in school. *Id.* Plaintiff also testified that he sweeps, does dishes, and keeps his room clean. *Id.* A CMHS follow up on May 18, 2021 showed that Plaintiff's "lungs were clear to auscultation with normal effort and no cough." *Id.* It also showed that Plaintiff "was well-developed, well-nourished, and oriented times four with age-appropriate behavior." *Id.* Subsequent CMHS follow ups on July 8, 2021, November 23, 2021, January 25, 2022, and on April 7, 2022 were "essentially normal." *Id.*

Sixth, the ALJ found that since January 31, 2019 Plaintiff "has had no limitation in health and physical well-being as a result of the impairments present at the CPD." *Id.* at 48-49. The ALJ considered multiple pieces of evidence in support of this finding. *Id.* At the hearing, Plaintiff's father testified that Plaintiff "does well" if he takes his medications every day. *Id.* at 48. The ALJ also looked at the November 8, 2018 CMHS visit, Plaintiff's hobbies mentioned at an HBHS appointment in

February of 2019, and Plaintiff's general well-being at the May 18, 2021 CMHS follow up. *Id.* at 48-49. CMHS follow ups on July 8, 2021, November 23, 2021, January 25, 2022, and on April 7, 2022 showed that Plaintiff was "essentially normal." *Id.* at 49.

After this analysis, the ALJ found that "since January 31, 2019, the [Plaintiff]'s impairments present at the CPD have not resulted in either 'marked' limitation in two domains of functioning or 'extreme' limitation in one domain of functioning." *Id.* This led the ALJ to conclude that since January 31, 2019, Plaintiff's impairments have not functionally equaled the listings of impairments at step two. *Id.*; *see* 20 CFR § 416.994a(b)(2).

At step three, the ALJ concluded that Plaintiff's "disability ended as of January 31, 2019, and the [Plaintiff] has not become disabled again since that date." Admin R. [11] at 50. First, the ALJ held that the evidence did not establish that Plaintiff had an impairment at the CPD that was not considered at the CPD and that Plaintiff had not developed a new impairment since the CPD. *Id.* at 49. The ALJ then found that Plaintiff has not had any impairments listed in 20 CFR § 404, Subpart P, Appendix 1 since January 31, 2019. *Id.* at 49-50. Plaintiff's asthma did not meet or equal the relevant listing "because there [was] no evidence of exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart." *Id.* at 49. And Plaintiff's ADHD and speech/language delay also did not meet or equal the relevant listing because there was a lack of relevant medical evidence. *Id.* at 49-50. The ALJ found that Plaintiff's impairments did not meet the requirements of any adult listings. *Id.* at 50.

Finally, since Plaintiff's "impairments [did] not result[ ] in either 'marked' limitation in two domains of functioning or 'extreme' limitation in one domain of functioning," the ALJ again found that the Plaintiff's impairments did not functionally equal the listing. *Id.*; *see* 20 CFR §§ 416.924(d) & 416.926a. All this led the ALJ to determine that Plaintiff's disability ended as of January 31, 2019. Admin R. [11] at 50.

Plaintiff has entered "new evidence" into the administrative record from after the ALJ's decision. *Id.* at 12-30. Plaintiff alleges that his condition has worsened as of February 23, 2023 and that Plaintiff has begun to see a therapist each month. *Id.* at 13. The evidence that Plaintiff offers to support that his condition is worsening consists of: (1) a HBHS form verifying that Plaintiff was seen on February 24, 2023; (2) prescriptions for Adderall Extended Release and Dextroamphetamine Extended Release dated after the ALJ's decision; (3) a January 31, 2023 letter from Dr. Bacon to "school officials" stating that Plaintiff has ADHD and is taking medication daily; (4) a January 31, 2023 letter from Dr. Bacon stating that Plaintiff must miss a day of school due to Asthma and that Plaintiff needs an inhaler; (5) an "Asthma Action Plan"; (6) a "Readmission Assessment Update" dated January 23, 2023; (7) a "Client Face Sheet" dated January 23, 2023; and (8) a Psychiatric Diagnostic Evaluation dated February 24, 2023. *Id.* at 12-30.

Plaintiff argues that he is still disabled and that his condition has worsened since the ALJ's decision. Pl.'s Br. [15]. The Commissioner responds that substantial evidence supports the ALJ's decision. Def.'s Br. [18] at 4-9.

## II. DISCUSSION

### 1.    Applicable law

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)). Evidence is substantial if "a reasonable mind would support the conclusion." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). There "must be more than a scintilla, but it need not be a preponderance." *Id.* (quotation omitted) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

On judicial review, this Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

The Court can order that a case be remanded to consider new medical evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To justify a remand, a plaintiff must satisfy three criteria. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989)). First, the evidence must be "new." *Id.*; *see also Hunter v. Astrue*, 283 Fed. App'x 261, 262 (5th Cir. 2008) (quoting *Haywood v.*

*Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989)) ("Evidence that was 'not in existence at the time of the administrative and district court proceedings, meets the 'new' requirement for remand to the Secretary.'"). Second, the evidence must be "material" such that there is a "reasonable possibility" that the evidence would have changed the outcome of the Commissioner's decision. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (quoting *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)). The materiality requirement also contains a temporal element that the evidence relate to the time period for which benefits were denied and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. *Leggett*, 67 F.3d at 567 (citing *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987)). Finally, the plaintiff must show good cause for not having incorporated the new evidence into the prior administrative record. *Pierre*, 884 F.2d at 803.

2.  <u>Analysis</u>

The Court will dismiss Plaintiff's complaint because Plaintiff has failed to identify any Commissioner error in finding that Plaintiff's disability ended as of January 31, 2019. Plaintiff re-states in cursory fashion his alleged conditions and claims that they have worsened recently. Pl.'s Br. [15]. Plaintiff fails to identify any error of law. Nor does he explain how substantial evidence does not support the ALJ's decision. Nevertheless, a review of the administrative record reveals that substantial evidence supports the ALJ's findings regarding Plaintiff's impairments.

At every step in the three-step MIRS evaluation, the ALJ fully explained her findings. The ALJ continually cited the relevant testimony and medical evidence. At

step one the ALJ cited Plaintiff's numerous visits to HBHS, CMHS, and Dr. Gammel's evaluation. Admin. R. [11] at 38-39. After looking at this data, the ALJ concluded that Plaintiff medically improved compared to the CPD as of January 31, 2019. *Id.*

At step two, the ALJ laid out all the medical evidence before her. The ALJ considered exam findings and "repeated statements at medical visits regarding medication efficacy" and found both to be inconsistent with the notion that Plaintiff was disabled from ADHD, communication impairment, and asthma. *Id.* at 39-42. The ALJ then weighed the opinion evidence in the record. *Id.* at 42. The ALJ gave weight to Drs. Hulett, Herzog, and Henderson's opinions that Plaintiff had medically improved since the CPD and was no longer disabled. *Id.* The ALJ found that these opinions were "supported by reference to objective test results, examination findings, clinical records, and other relevant evidence that suggest medical improvement since the" CPD and "consistent with the record as a whole." *Id.* The ALJ also credited Dr. Gammel's opinion with "some weight" because the January 2019 speech-language evaluation supported it and because it was "somewhat consistent" with later records and Plaintiff's father's hearing testimony. *Id.*

From there, the ALJ analyzed each of the six domains of function. *Id.* at 43-49. Throughout this analysis, the ALJ continually cited the hearing testimony and medical evidence that supported her determination on each domain of function. *Id.*

At step three, the ALJ cited the relevant standards and explained why Plaintiff could not demonstrate that he was disabled as of January 31, 2019. *Id.* at 49-50. The ALJ's decision is thorough and well-reasoned.

15

If Plaintiff is asking that the Court remand because of the evidence in the administrative record from after the ALJ's decision, this argument for remand is unpersuasive. Plaintiff offers "new evidence" that his condition "got worse." *Id.* at 12-30; Pl.'s Br. [15] at 2. But "[i]mplicit in the materiality requirement . . . 'is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (quoting *Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)). Plaintiff's proffered evidence from after the ALJ's decision fails the materiality requirement because it evidences "the subsequent deterioration of the previously non-disabling condition." *Id.*; *see also id.* ("[I]t would be inconsistent with these principles of appellate review to remand the case solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition."); *Brown-Summers v. Kijakazi*, No. 3:21-cv-699-DPJ-BWR, 2023 WL 1774002, at *4 (S.D. Miss. Jan. 10, 2023) ("The medical records attached to [p]laintiff's Memoranda are not material because they speak to [p]laintiff's condition and treatment . . . after the date of the ALJ's decision."), *R. & R. adopted sub nom.* 2023 WL 1768126 (S.D. Miss. Feb. 3, 2023). Plaintiff also has not attempted to demonstrate good cause and "[t]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre*, 884 F.2d at 803 (citing *Bradley*, 809 F.2d at 1058). The Court will not remand.

III.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Complaint [1] is dismissed with prejudice and the Commissioner's decision is affirmed.

**SO ORDERED**, this the 21st day of May, 2024.

_s/ Bradley W. Rath_

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE